# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MALCOLM D. SMITHSON and CHRISTINE B.
SMITHSON TRUSTS, BRAZOS BRAVO ROYALTY
TRUST, PECOS SLOPE ROYALTY TRUST, and
NEWKIRK ROYALTY TRUST, individually and on
behalf of all other private royalty and overriding
royalty owners in the Bravo Dome Carbon Dioxide
Unit, New Mexico, similarly situated,

        Plaintiffs,

vs.                                                                    No. CIV 06-624 JB

AMERADA HESS CORPORATION n/k/a
HESS CORPORATION,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Hess's Motion for Protective Order

Prohibiting the Deposition of Hess Counsel David M. Castro, filed September 7, 2007 (Doc. 41).

The Court held a hearing on the motion on November 8, 2007.  The primary issue is whether the

Court should permit the Plaintiffs' deposition of an in-house counsel for Defendant Amerada Hess

Corporation.  Because the Court concludes that the Plaintiffs have not shown, at this early stage of

the case, that no other means exist to obtain the information than to depose opposing counsel, the

Court grants Amerada Hess' motion without prejudice to the Plaintiffs seeking the deposition again

after more discovery has been conducted and when the Plaintiffs' needs for the information is more

focused, and can be decided in a concrete setting.

## FACTUAL BACKGROUND

      Cindy Clendenen is the daughter of Robert Creson, a named plaintiff in the Bravo Dome-

related litigation known as <u>Creson v. Amoco Production Company and Amerada Hess</u>, 129 N.M. 529, 10 P.3d 853 (Ct. App. 2000).  <u>See</u> Defendant Hess's Motion for Protective Order Prohibiting the Deposition of Hess Counsel David M. Castro ¶ 3, at 2, filed September 7, 2007 (Doc. 41)("Motion").  Mr. Castro was counsel of record for Amerada Hess in that case.  <u>See</u> <u>id.</u>  Mr. Castro is presently the Assistant General Counsel, has been in-house counsel to Amerada Hess for almost twenty-five years, and, in the last ten years, has been directly involved with at least four major pieces of litigation involving the Bravo Dome Unit, which is the subject of this federal litigation. <u>See</u> <u>id.</u> ¶ 1, at 1.

In a letter dated February 5, 1998, from A. Andrew Gallo for Amoco Corporation,  to Stephen D. Long for Shell Western E&P Inc., Ernest Terry for Exxon Corp., and David M. Castro for Amerada Hess Corp., Mr. Gallo stated: "I enjoyed meeting with you all last week to discuss matters relating to the accounting issues created by our recent settlement . . . ."  Letter from A. Andrew Gallo to Stephen D. Long, Ernest Terry, and David M. Castro for Amerada Hess Corp. at 1 (dated Feb. 5, 1998) ("February 5, 1998 letter").  Mr. Gallo wrote: "Amoco Production Company . . . , Shell Western E&P Inc. . . . , Amerada Hess Corporation . . . and Exxon Corporation  . . . all believe we must take the following steps in order to implement the terms of our settlement with the Plaintiffs in [<u>Feerer v. Amoco Production Co.</u>]."  February 5, 1998 letter at 1.  The steps included: "Each working interest owner . . . will pay its fee royalty owners based on its entitlements and at the price it received for its CO2 pursuant to its CO2 sales contracts."  <u>Id.</u> Mr. Gallo wrote the letter in regard to <u>Feerer v. Amoco Production Co.</u> Mr. Gallo wrote: "If this letter accurately reflects your understanding of the procedures we agreed to last week, please have the appropriate corporate representative execute a copy of this letter in the designated line, below."  February 5, 1998 letter at 2.

In a letter dated January 27, 2004 to Mr. Castro on behalf of the Pecos Slope Royalty Trust, Clendenen stated that she was "very concerned" about the royalty payment reflected in a November 2003 revenue check.  <u>See</u> Motion, Letter from Cindy Clendenen to David M. Castro at 1 (dated January 27, 2004).  She also requested specific information regarding how royalties were calculated. <u>See</u> <u>id</u>.  On May 7, 2004, Mr. Castro wrote a letter in response to Clendenen's January 27, 2004 letter.  <u>See</u> Motion, Exhibit A, Letter from David M. Castro to Cindy Clendenen at (dated May 7, 2004).

## PROCEDURAL BACKGROUND

The Plaintiffs filed this lawsuit on June 6, 2006.  <u>See</u> Notice of Removal  at 14, filed July 11, 2006 (Doc. 1).  Mr. Castro is not trial counsel for Amerada Hess in this case.  He has not entered an appearance as counsel of record.

By a letter dated August 13, 2007, the Plaintiffs' counsel requested dates for several depositions, including one of Mr. Castro.  <u>See</u> Motion ¶ 1, at 1.  In telephone conversations, Amerada Hess' counsel inquired of the Plaintiffs' counsel regarding the basis for the request to depose Mr. Castro.  <u>See</u> <u>id.</u> ¶ 2, at 1.  The Plaintiffs' counsel indicated that Mr. Castro's deposition was sought to secure testimony regarding the May 7, 2004 letter from Mr. Castro to Clendenen.  <u>See</u> <u>id.</u>  ¶ 2, at 1-2.

On August 29, 2007, the Plaintiffs' counsel tendered a deposition notice for Mr. Castro's deposition, setting the proposed deposition for September 14, 2007.  <u>See</u> Motion, Exhibit C, Notice to Take Videotaped Depositions (dated August 29, 2007).  The Plaintiffs, on the same day that they tendered the deposition notice for Mr. Castro, also tendered deposition notices for three witnesses from Amerada Hess.  <u>See</u> <u>id.</u>  The Plaintiffs also tendered a rule 30(b)(6) notice requesting a witness to testify to the same to the same issues contained in Mr. Castro's August 27, 2004 letter and,

perhaps even more broadly, to "the method used by Hess to calculate and pay royalty overriding royalty on $CO_2$ produced from the Bravo Dome Unit during January 2000 to present." Motion, Exhibit E, Plaintiffs' Notice to Take Videotape Deposition Pursuant to F.R.C.P. 30(b)(6).

By a letter dated September 5, 2007, and consistent with previous telephonic representations, Amerada Hess' counsel informed the Plaintiffs' counsel that Mr. Castro would not be presented as a witness and further indicated that, if the notice of deposition was not withdrawn, Amerada Hess would move for a protective order. See Motion, Exhibit D, Letter from Bradford C. Berge to J.E. Gallegos (dated September 5, 2007). On September 6, 2007, Amerada Hess' counsel attempted to contact the Plaintiffs' counsel to further discuss withdrawal of the deposition notice, but learned that the Plaintiffs' counsel was out of the office until Monday, September 10, 2007. See Motion ¶ 7, at 2. Local Rule 30.2 obligated Amerada Hess to file this motion at least five calendar days before the scheduled deposition, thus requiring the filing before Monday, September 10, 2007. See D.N.M.LR-Civ. 30.2 ("Failure of a deponent to appear at the time and place designated may be regarded as a willful failure to appear pursuant to Fed. R. Civ. P. 37(d) or contemptible conduct pursuant to Fed. R. Civ. P. 45(e) unless a motion for protective order and a notice of non-appearance are served at least five (5) calendar days before the scheduled deposition . . . .").

Amerada Hess moves the Court, pursuant to rule 26(c) of the Federal Rules of Civil Procedure, for a protective order prohibiting Mr. Castro's deposition. See Motion at 5. In its motion, Amerada Hess requests that the Court, pursuant to rule 26(c), issue a protective order prohibiting Mr. Castro's deposition. See id. Concurrent with that motion, Amerada Hess filed a notice of non-appearance for Mr. Castro. See Motion ¶ 8, at 3.

Amerada Hess contends that the Plaintiffs cannot demonstrate that no other means exist to obtain the information contained in the May 7, 2004 letter. See Motion at 4. Amerada Hess

contends that, because the Plaintiffs cannot establish the critical factor of "no other means exist to obtain the information than to depose opposing counsel," the Court should issue the requested protective order.  Motion at 4.

The Plaintiffs responded on September 20, 2007.  See Plaintiffs' Response in Opposition to Dependant's Motion for Protective Order Prohibiting the Deposition of David Castro, filed September 20, 2007 (Doc. 43).

The Court held a hearing on this matter on November 8, 2007.[1] The Plaintiffs represented that discovery was delayed, because Amerada Hess did not produce substantial discovery until August of 2007.  See Federal Digital Tape Recorder ("FTR") at 9:06:06-9:06:14.  Specifically, the Plaintiffs contended that scheduling of depositions was delayed because of that late production.  See id. at 9:06:31-9:06:41.

The Plaintiffs also indicated that two depositions that were scheduled at the same time as Mr. Castro's deposition were taken on November 2, 2007.  See id. at 9:06:36-9:06:37.  The Plaintiffs further represented that those depositions were originally scheduled in September of 2007, but were delayed because of conflicts with Amerada Hess' counsel.  See id. at 9:06:34-9:06:37. The Plaintiffs noted that they have already conducted the 30(b)(6) deposition.  See id. at 9:06:49.  The Plaintiffs also noted that they are still trying to track down two former Amerada Hess employees to depose them.  See FTR at 9:06:56-9:07:02.

The Plaintiffs contended that Mr. Castro's deposition is "critical," because he implemented the royalty payment methodology at issue in this case and was responsible for telling the business

---

[1]The hearing was recorded on tape rather than by written transcript.  The Court is, therefore, unable to provide pinpoint transcript citations to the dialogue at the hearing.  The Court instead cites to the record meter.

unit what contracts were to be used in the royalty calculation.  See id. at 9:07:54-9:08:16.  The Plaintiffs represented that they found out that Mr. Castro was allegedly responsible for telling the business unit what contracts were to be used in the royalty calculation at the 30(b)(6) deposition of Marshall Penwright, an employee of Amerada Hess.  See id. at 9:08:21; id. at 9:15:58-9:16:04.

Applying the factors in Boughton v. Cotter Corp., 65 F.3d 823 (10th Cir. 1995), Amerada Hess contended that the Plaintiffs have not made a showing on the "other means" Boughton v. Cotter Corp. factor.  See FTR at 9:13:22.  Amerada Hess contended that the Plaintiffs did not explore in the depositions it has taken whether $CO_2$ prices are no longer tied to oil in $CO_2$ contracts and why that would be the case.  Amerada Hess also argues that the Plaintiffs did not use the depositions that they took to explore other means of securing the sought information other than deposing Mr. Castro. See id. at 9:15:04-9:15:48.  Amerada Hess also contended that the Plaintiffs could have sent a more specific 30(b)(6) notice and had the opportunity at the November 2, 2007 depositions to explore the issues in the May 7, 2004 letter.  See id. at 9:16:23-9:16:40.  Amerada Hess contended that the Plaintiffs could have asked those deponents about the letter.  See id. at 9:16:41-9:16:55.

Amerada Hess suggested that the Plaintiffs could serve a 30(b)(6) notice that very narrowly requests a deponent on the use of qualified contracts for the purpose of royalty computations, but the Plaintiffs have not done so.  See FTR at 9:17:09-9:17:25.  The Court noted that the prior 30(b)(6) notice was broad enough to include the issue.  See FTR at 9:17:26-9:17:38.  Amerada Hess acknowledges that the prior 30(b)(6) notice was broad enough to encompass asking the witness about the contentions in Clendenen's letter.  See FTR at 9:17:45-9:17:50.

Amerada Hess did not blame the Plaintiffs for delay in depositions, because the delay was created by counsels' unavailability.  See id. at 9:18:14-9:18:20.  Amerada Hess contended that the Plaintiffs have time to serve another 30(b)(6) notice and that Boughton v. Cotter Corp. requires it.

See id. at 9:18:44-9:19:49.  Amerada Hess maintained that the Plaintiffs have not fully explored all their means of obtaining the information that they wish to seek from Mr. Castro.  See FTR at 9:19:52-9:20:59.  Amerada Hess noted that it will fully cooperate to offer a witness on the issue that the Plaintiffs wish to explore.  See id. at 9:18:50.

Amerada Hess disagreed with the Plaintiffs' contention that Mr. Castro's advice is business advice, because it asserts that Mr. Castro is acting in the capacity of an attorney to interpret the settlement agreement in  Feerer v. Amoco Production Co., No.1:95-cv-00012-JEC-WD (D.N.M. November 13, 2007)(Conway, J.), and to advise Amerada Hess how to comply with it.  See id. at 9:46:13-9:47:47.

The Plaintiffs responded that Mr. Castro is the identified Amerada Hess employee responsible for determining how royalty payments would be made under the Feerer v. Amoco Production Co. settlement agreement.  See FTR at 9:21:26-9:21:30; id. at 9:25:52-9:26:05.  The Plaintiffs contended that, during the depositions it has taken, the witnesses indicated that Mr. Castro, as a member of the legal department, is responsible for determining what contracts are qualified for royalty calculation.  See id. at 9:29:16-9:30:09.  The Plaintiffs noted that they are seeking punitive damages under New Mexico law for breach of contract, because they contend that the breach was wilful or wanton.  See id. at 9:32:01-9:32:15.  The Plaintiffs contended that they cannot make the showing necessary to seek punitive damages if they cannot depose Mr. Castro, who is the only witness who is involved in determining what contracts are used in royalty calculation, and the only witness who is on record to have responded to a letter from a royalty owner and made representations about why royalty prices were dropping, that $CO_2$ price contracts are no longer tied to oil.  See id. at 9:32:21-9:32:59.  The Plaintiffs intend to prove that Mr. Castro's representations were not true.  See id. at 9:08:54-9:09:11; id. at 9:32:36-9:32:59.

The Plaintiffs distinguished Shelton v. Am. Motors Corp. and Boughton v. Cotter Corp., because the counsel at issue in those cases did not have an identified role in making business decisions and because the counsel in those cases were acting as how an attorney normally acts. See id. at 9:34:16-9:35:13. The Plaintiffs contended that Mr. Castro was acting in a business decision capacity in determining what contracts are to be used for royalty payments, not in a legal capacity. See id. at 9:35:42-9:35:49. The Plaintiffs contended that business decisions are not privileged. See id. at 9:38:42-9:38:44.

The Plaintiffs contended that the first prong of Boughton v. Cotter Corp. is satisfied, because the only means to obtain the factual information regarding Mr. Castro's business decision is through his deposition. See FTR at 9:39:40-9:40:11. The Plaintiffs further contended that the other prongs of Boughton v. Cotter Corp. should be a lower standard for an attorney who is making business decisions rather than giving legal advice. See FTR at 9:40:29-9:40:37. The Plaintiffs contended that business communications are not protected under attorney-client privilege. See id. at 9:38:52-9:39:01. The Plaintiffs requested that the Court order Amerada Hess to identify the person at Amerada Hess who is responsible for deciding what the methodology is on determining what contracts to use, who knows what contracts are or are not included in the royalty calculation methodology, and knows about Mr. Castro's representation that $CO_2$ prices are no longer tied to oil in $CO_2$ contracts. See id. at 9:45:17-9:9:45:41.

The Plaintiffs introduced several documents as exhibits at the Court's November 8, 2007 hearing. The Plaintiffs introduced the February 5, 1998 letter from Gallo to Long, Terry, and Mr. Castro (dated Feb. 5, 1998), that they contended demonstrates that Mr. Castro was responsible for the royalty payment methodology calculation in the Feerer settlement. The Plaintiffs contended that the February 5, 1998 letter memorialized the proper royalty payment methodology that Amerada

further argued that, because Mr. Castro was Amerada Hess' representative at the meeting the letter supports their contention that Mr. Castro is the only source of the information that the Plaintiffs seek.

The Plaintiffs also introduced another copy of the January 27, 2004 letter and the May 7, 2004 letter.  The Plaintiffs introduced a copy of a sale and purchase contract between Kinder Morgan CO2 Company, L.P. and Amerada Hess (dated Sept. 3, 2003).  Lastly, the Plaintiffs introduced pages from the rough draft of the deposition they took of Marshall Penwright.  In the pages the Plaintiffs introduced, there is no date or time given for Penwright's deposition.  The Plaintiffs contended that the pages demonstrate that Mr. Castro is the only source of the information they seek.  The Plaintiffs asked Penwright whether "two Fasken contracts" were used in the royalty calculation.  See Deposition of Marshall Penwright (rough draft) ("Penwright Depo.") at 24:1-2; id. at 31:21.  Penwright answered: "If -- if our legal department tells us that it's part of the qualified contracts, then, yes, we would use it."  Penwright Depo. at 31:22-24.  The Plaintiffs asked Penwright: "And when you refer to the legal department, does that refer to David Castro?" to which Penwright answered: "I refer to him on litigation matters, yes."  Penwright Depo. at 66:9-11.  The Plaintiffs asked Penwright who the legal department would be and Penwright answered: "For litigation matters, it would be Mr. Castro and for other matters it would be Dennis Smith."  Penwright Depo. at 66:17-21.

## LAW REGARDING DEPOSITIONS OF COUNSEL

As the Court has previously recognized, "[f]orcing trial counsel to testify as a witness" is disfavored.  Archuleta v. City of Santa Fe, No. CIV 04-0247 JB/DJS, 2005 WL 2313706 at *5 (D.N.M. August 10, 2005)(Browning, J.)(quoting Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)(citations omitted)).  As the United States Court of Appeals for the Eighth

Circuit has noted:

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.

Shelton v. Am. Motors Corp., 805 F.2d at 1327. In Shelton v. American Motors Corp., the plaintiffs sought the depositions of several individuals, including the defendant's in-house counsel. See 805 F.2d at 1325. The attorney was "employed by [the defendant] as an attorney in its Litigation Department, and she was assigned specifically to the case at bar as [the defendant's] supervising in-house counsel." Id. (internal quotations omitted). The defendant moved for a protective order and moved to quash the deposition. See id. The magistrate partially granted the protective order, but denied the motion to quash. See id. At the deposition, the attorney refused to answer several questions regarding the existence or nonexistence of several documents. See id. The plaintiff moved for sanctions, which the magistrate denied, but ordered the defendant to make the attorney available to give her deposition. See id. The attorney again refused to answer question. See id. The magistrate ordered the attorney to respond, but the defendant's trial counsel instructed her not to answer, and invoked attorney-client privilege and the work-product doctrine. See id. The magistrate recommended that the district court order the defendant to show cause why the in-house counsel should not be held in contempt and why default judgment should not be entered against the defendant. See id. at 1326. The district court held that neither attorney-client privilege nor the work-product doctrine protected the information that the plaintiffs sought from the in-house counsel.

See id.  The district court reasoned that the fact that documents or knowledge came to an attorney while acting for the client is insufficient to invoke attorney-client privilege.  See id. (quoting Arkansas Nat'l Bank v. Cleburne County Bank, 525 S.W.2d 82, 84-85 (Ark. 1975)("An attorney may be required to produce papers belonging to his client where the knowledge of their existence is accessible to others or to the public, or if . . . the client may  be compelled to produce them.").  The Eighth Circuit noted that it did "not hold that opposing trial counsel is absolutely immune from being deposed." Shelton v. Am. Motors Corp., 805 F.2d at 1327. It "recognize[d] that circumstances may arise in which the court should order the taking of opposing counsel's deposition[,] [b]ut those circumstances should be limited . . ." Id.  The Eighth Circuit then explained that the "circumstances should be limited to where the party seeking to take the deposition has shown that [i] no other means exist to obtain the information[;] [ii] the information sought is relevant and nonprivileged; and [iii] the information is crucial to the preparation of the case." Id.  Using those factors, the Eighth Circuit held that the information sought could be obtained by means other than deposing in-house counsel for the defendant and the information sought was privileged.  See id. at 1328-29.

In Boughton v. Cotter Corp., the United States Court of Appeals for the Tenth Circuit adopted Shelton v. American Motors Corp.'s three-part test to determine whether a party can take opposing counsel's deposition.  See Boughton v. Cotter Corp., 65 F.3d at 830.  The trial court in Boughton v. Cotter Corp. had entered a protective order prohibiting the plaintiffs from taking the deposition of outside counsel representing the defendant in that case.  See id. at 828.  The plaintiffs contended that the outside counsel's deposition should be taken "because of his role as spokesperson for [the defendant] before regulatory agencies and the press and because of his involvement in helping [the defendant] prepare its various license applications and giving business advice to [the defendant] on the location of a new mill on the site of the old one." Id.

The Tenth Circuit noted in <u>Boughton v. Cotter Corp.</u> that the trial court treated the outside counsel as an attorney for the defendant subject to the protection of <u>Shelton v. Am. Motor Corp.</u> <u>See</u> <u>Boughton v. Cotter Corp.</u>, 65 F.3d at 829.  The Tenth Circuit noted that the record supported the trial court's treatment of the outside counsel's status, because, according to the defendant's executive vice president and general manager, and its president, the outside counsel operated solely as an attorney, made no operating decisions, worked as an attorney and intermediary, and was not authorized to make commitments on the defendant's behalf without prior approval.  <u>See</u> <u>id.</u>  The Tenth Circuit stated: "[W]e approve of the criteria set forth in <u>Shelton v. Am. Motors Corp.</u>, . . . , but at this time we need only make the more limited holding that ordinarily the trial court at least has the <u>discretion</u> under Rule 26(c) to issue a protective order against the deposition of opposing counsel when any one or more of the three <u>Shelton</u> criteria for depositions . . . are <u>not</u> met."  <u>Id.</u> at 830.  The Tenth Circuit noted that "[t]he only information for which [the outside counsel] was likely to be an exclusive source [was] [his] own reasons for making certain statements as a spokesperson for [the defendant]."  <u>Id.</u> at 831.  The Tenth Circuit also rejected the plaintiffs' contention that deposition of outside counsel was essential to their fraud claim, because the plaintiffs had failed to "establish as many elements of the alleged wrongs as was possible through alternative sources before seeking the testimony of [the defendant's] counsel."  <u>Id.</u>  The Tenth Circuit noted that only after the plaintiffs had directed inquiry to the defendant's officers and directors about knowledge or fraudulent intent on their part would the district court be able to fully assess whether the outside counsel's deposition was crucial to the plaintiffs' case.  <u>See</u> <u>id.</u> at 831.

The party seeking the deposition of opposing counsel bears the burden of establishing that each of the three factors are satisfied and failure to carry that burden on each of the three factors permits the trial court to issue the requested protective order.  <u>See</u> <u>id</u>. at 829-31 and n.9.  In other

-12-

words, the trial court may issue a protective order against the deposition of opposing counsel when any one or more of the three factors are not met.  See id. at 830.

In In re subpoena issued to Dennis Friedman, 350 F.3d 65 (2d Cir. 2003), the "creditors' committee brought an action against Chapter 11 debtor's former officers and directors for alleged breach of fiduciary duty, and the officers and directors sought to defend based on their alleged good faith reliance on advice of counsel." Id. at 65.  The district court quashed the deposition subpoena of an attorney "who had previously served as counsel during merger negotiations to a now-bankrupt corporation of which the non-attorney defendants[ ] are former directors." Id. at 66.  The attorney no longer served as a formal advisor to the former directors, but "is a non-litigating partner at a law firm now representing them in the Delaware litigation." Id.  The district court relied upon Shelton v. Am. Motors Corp. to rule that the plaintiff must exhaust all practical alternative means of obtaining the information sought from the attorney before it would allow them to take the proposed deposition.  See In re subpoena issued to Dennis Friedman, 350 F.3d at 67.  The United States Court of Appeals for the Second Circuit concluded that the Federal Rules of Civil Procedure require a more flexible approach to attorney depositions than the "rigid Shelton rule." In re subpoena issued to Dennis Friedman, 350 F.3d at 67.  The Second Court did not need to rule definitively on the matter, though, because the attorney consented to the deposition and rendered the appeal moot.  See id.  The Second Circuit noted that it had "never adopted the Shelton rule and ha[d] stated specifically that the disfavor with which the practice of seeking discovery from adversary counsel is regarded is not a talisman for the resolution of all controversies of this nature." In re subpoena issued to Dennis Friedman, 350 F.3d at 71.  The Second Circuit characterized Boughton v. Cotter Corp., 65 F.3d at 830-31, as "approving of the three-pronged test set forth in Shelton, but ultimately upholding the district court's application of the rule under Rule 26." In re subpoena issued to Dennis Friedman,

-13-

350 F.3d at 71 n.3.  The Second Circuit ultimately disagreed with the <u>Shelton v. Am. Motors Corp.</u> rule and instead directed district courts to use "the flexible approach that we conclude is mandated by the federal rules."  <u>In re subpoena issued to Dennis Friedman</u>, 350 F.3d at 72.

## ANALYSIS

Discovery is ongoing between the parties, and the Plaintiffs indicated at the Court's November 8, 2007 hearing that they sought to take two more depositions.  Amerada Hess has agreed to provide an additional 30(b)(6) deponent.  Because discovery has not closed, and thus the Plaintiffs have not demonstrated that the information they seek from Mr. Castro cannot be obtained by any other means, a protective order precluding his deposition is appropriate at this time.  If, after completing the discovery, the Plaintiffs are still unable to obtain the information they seek regarding: the identity of the person at Amerada Hess who is responsible for deciding what the methodology is on determining what contracts to use, who knows what contracts are or are not included in the royalty calculation methodology, and who knows about Mr. Castro's representation that $CO_2$ prices are no longer tied to oil in $CO_2$ contracts.

Mr. Castro is in-house counsel for Amerada Hess.  <u>See</u> Motion ¶ 1, at 1.  While there is a reasonable argument that the criteria in <u>Boughton v. Cotter Corp.</u> does not apply -- or applies less rigorously -- to in-house counsel who are not trial counsel in the litigation before the court, the Court does not read the Tenth Circuit's language in <u>Boughton v. Cotter Corp.</u> as limited to trial counsel. <u>See</u>, <u>e.g.</u>, 65 F.3d at 829 ("opposing counsel"); <u>id</u> at 829 n.8 ("opposing counsel"); <u>id.</u> at 830 ("opposing counsel"); <u>id.</u> at 830 n.9 ("party's in-house counsel"); <u>id.</u> at 831 ("counsel"); <u>id.</u> at 831 n.12 ("opposing counsel").  Moreover, while the problems of deposing opposing counsel may be somewhat mitigated when the deponent lawyer is not trial counsel, most of the problems that the <u>Shelton v. American Motors Corp.</u>  court and the <u>Boughton v. Cotter Corp.</u> court identified do not

-14-

disappear.  Even if the criteria does not apply to in-house counsel who are not trial counsel in the current litigation, the <u>Shelton</u> criteria remains useful factors to consider when deciding a motion for protective order.

The Court notes that the Plaintiffs do not seek to question Mr. Castro regarding the defense of this lawsuit.  The Plaintiffs noticed Mr. Castro as a fact witness.  <u>See</u> Motion, Exhibit C, Notice to Take Videotaped Depositions (dated August 29, 2007); Plaintiffs' Response in Opposition to Defendant's Motion for Protective Order Prohibiting the Deposition of David Castro, filed September 20, 2007 (Doc. 43)("Response").  Thus, some of the concerns about using the deposition of opposing counsel as an harassment tactic are diminished.

Without taking a deposition in this litigation, the Plaintiffs sought to take Mr. Castro's deposition.  <u>See</u> Defendant Hess's Reply in Support of its Motion for Protective Order Prohibiting the Depositions of Hess Counsel David M. Castro, filed October 8, 2007 (Doc. 44)("Reply").  The law applicable to this motion indicates that it is premature to depose Mr. Castro.  The Plaintiffs cannot establish at least one of the critical factors, namely, that "no other means exist to obtain the information than to depose opposing counsel."  <u>Boughton v. Cotter Corp.</u>, 65 F.3d at 829.

Although the Second Circuit has characterized <u>Boughton v. Cotter Corp.</u> as not adopting the <u>Shelton v. Am. Motor Corp.</u> rule, <u>see</u> <u>In re subpoena issued to Dennis Friedman</u>, 350 F.3d at 71 n.3, the Court interprets <u>Boughton v. Cotter Corp.</u> as adopting the <u>Shelton v. Am. Motor Corp.</u> criteria. While a protective order may not be mandatory if the criteria are met, the Tenth Circuit made clear that the trial court generally has discretion to issue a protection order when one or more criteria are not met.  <u>See</u> <u>Thiessen v. Gen. Elec. Capital Corp.</u>, 267 F.3d 1095, 1112 n.15 (10th Cir. 2001)("<u>Shelton</u> was adopted by this court in <u>Boughton v. Cotter Corp.</u>, 65 F.3d 823, 830 (10th Cir.1995).");  <u>Equal Employment Opportunity Comm'n v. Roswell Radio, Inc.</u>, No. CIV-06-0253

JB/LAM, 2007 WL 2305521 at * 3(D.N.M. June 12, 2007); Archuleta v. City of Santa Fe, No. CIV 04-0247 JB/DJS, 2005 WL 2313706 at *5 (quoting Shelton v. Am. Motors Corp., 805 F.2d at 1327 (8th Cir. 1986)).  Because the Plaintiffs cannot meet one of the Boughton v. Cotter Corp. factors, the Court believes it is authorized to issue a protective order prohibiting Mr. Castro's deposition. See Boughton v. Cotter Corp., 65 F.3d at 830 (holding that ordinarily the trial court is permitted, pursuant to rule 26(c), to issue protective orders barring the deposition of opposing counsel "when any one or more of the three Shelton[v. American Motors Corp.] criteria for deposition . . . are not met.").  Because the Court believes it is authorized under the Boughton v. Cotter Corp. and under rule 26, and because it believes that a wise exercise of discretion counsels for the protective order, the Court will issue the requested protective order.

The primary justification offered for the requested deposition of Mr. Castro is that the Plaintiffs seek testimony about the information contained in Mr. Castro's May 7, 2007 letter.  See Reply at 1-2.  The interests that Clendenen represented in her January 27, 2004 letter are members of the class in this case.  See Response at 3.  A review of Mr. Castro's May 7, 2004 letter indicates that the information contained therein is factual in nature.  See Motion, Exhibit A, Letter from David M. Castro to Cindy Clendenen at (dated May 7, 2004).  His letter speaks primarily to supply-contract terms, delivery points, contract-bidding processes and outcomes, and pricing.  See id.

The Plaintiffs' counsel may have considerable knowledge, if not full knowledge, of these facts from their clients or from other people at Amerada Hess.  In any case, the Plaintiffs have not, at this early stage of discovery, demonstrated that no other means exist to obtain the information contained in the May 7, 2004 letter.  It is possible, if not likely, that Amerada Hess employees, charged with the day-to-day responsibilities for the business operations of the Bravo Dome Unit and enhanced oil recovery units, may know this information.  The information also may be available

from documents and the supporting deposition testimony of business persons.

In sum, the Plaintiffs may have "other means" to obtain the information sought.  They appear to have ability to obtain a rule 30(b)(6) witness and have some knowledge of key employees whom they can depose in their individual capacities.  While the Court cannot, at this early stage of proceedings, be fully aware of what those other means are, it is premature to decide that there are no other means.

In any case, it may not be necessary to get this information from the attorneys.  Accordingly, the Plaintiffs have not, at this early stage of proceedings, established this important prong of the Boughton v. Cotter Corp. test.  The Court will issue the protective order that Amerada Hess requests, without prejudice to the Plaintiffs to seek this deposition at a later stage of discovery should other means not make the information sought available.

To assist the parties with any decision that they may have to make when discovery is completed, the Court notes that it is inclined, on the record before it, to believe that the other two Shelton criteria may be met.  While the Court cannot say -- at this stage of the proceedings --  that Mr. Castro is the only source of personal knowledge regarding facts contained in the May 7, 2007 letter, the Court believes that he may have some personal knowledge.  The Plaintiffs seek to depose Mr. Castro concerning his personal, factual knowledge about the supply and demand for $CO_2$ from the Bravo Dome Unit, the market and prices for Unit $CO_2$, formation of sales contracts for Unit $CO_2$, and Amerada Hess' royalty payment methodology.  See Response at 1-2.  The May 7, 2007 letter can be reasonably read as Mr. Castro vouching for and put his personal knowledge in issue when he sent correspondence in 2004 to one of the Plaintiffs' representatives.  See Motion, Exhibit A, Letter from David M. Castro to Cindy Clendenen at (dated May 7, 2004).  Moreover, the value of Unit $CO_2$ as it relates to the calculation of the class royalty payments is one of the central issues in

the case.  Thus, after discovery is complete, if the Plaintiffs cannot secure the sought information through some other means, the Court is inclined to let the Plaintiffs take his deposition.

**IT IS ORDERED** that the Defendant Hess's Motion for Protective Order Prohibiting the Deposition of Hess Counsel David M. Castro is granted.  The Court will preclude the deposition at this time without prejudice to the Plaintiffs seeking to depose Mr. Castro later in the discovery period after they have deposed the two witnesses they indicated at the hearing they would depose and after they take the 30(b)(6) deposition that Amerada Hess has agreed to provide.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Gary D. Alsup
Alsup Law Office
Clayton, New Mexico

-- and --

J.E. Gallegos
Michael J. Condon
Gallegos Law Firm, P.C.
Santa Fe, New Mexico

     *Attorneys for the Plaintiffs*

Larry J. Montano
Holland & Hart, LLP
Denver, Colorado

--and--

-18-

Bradford C. Berge
Robert J. Sutphin, Jr.
Holland & Hart, LLP
Santa Fe, New Mexico

    *Attorneys for the Defendant*